UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
DENNIS WYSOCKI and LISA WYSOCKI,

                                Plaintiffs,                      23 Civ. 8790

   -against-

NASSAU COUNTY, New York, PATRICK         **COMPLAINT**
RYDER, Individually and Officially, MARC
TIMPANO, Individually, Officer "V" SCAGLIONE,
Individually,
                              Defendants.
-------------------------------------------------------------x

      Plaintiffs, DENNIS WYSOCKI and LISA WYSOCKI, by and through their attorneys, The Bellantoni Law Firm, PLLC, for their Complaint respectfully state:

**NATURE OF THE ACTION**

      1.     This is an action for injunctive, compensatory, economic, punitive, and presumed money damages proximately resulting from the actions of the individually named defendants' violations of the plaintiff's Constitutional Rights under the Second, Fourth, and Fourteenth Amendments pursuant to 42 U.S.C. § 1983.

      2.     This action challenges the overreach and breadth of impermissible discretion exercised by the Nassau County Police Department Pistol License Section ("NCPD") under the façade of "public safety."

      3.     Plaintiffs challenge the defendants' 'at will' exercise of police powers to suspend and/or revoke the individual right to possess and carry firearms for reasons that are subjective and discretionary, and/or under circumstances that lack an historical analogue to this Nation's traditions of firearm regulations, in violation of the Second and Fourteenth Amendments.

1

4. Plaintiffs further challenge Defendants' enforcement of the Nassau County Police Department Pistol License Section Handbook as an independent basis to suspend and/or revoke the right to possess handguns, rifles, and shotguns should a licensee 'violate' NCPD's handbook 'rules.' NCPD has no legislative authority and cannot pass any regulations affecting constitutional rights, including those protected by the Second Amendment.

5. Plaintiffs further challenge a policy and procedure of NCPD that employs a pretextual application of Penal Law section 400.00(11) against licensees who remain eligible under 400.00(1)(a) through (o) for the issuance of a firearm license to arbitrarily exercise police power to seize lawfully owned firearms in the absence of a warrant, absent any disqualifiers to firearm possession under state and federal law, and absent any criminal conduct on the part of the licensees.

6. In that same vein, Plaintiffs also seek redress for the violations of their Fourth Amendment rights by Defendants' discretionary, arbitrary, and subjective suspension of their New York State pistol licenses which, *as a matter of law*, compelled the surrender of Plaintiffs' private property, to wit, handguns and long guns under Penal Law § 400.00(11).

7. The compulsory seizure of Plaintiffs' property by Defendants was in the absence of any warrant, exigency, or any other constitutionally valid exception to the Fourth Amendment.

8. Plaintiffs seek a judicial declaration that NCPD's policies as described herein violate the Second, Fourth, and Fourteenth Amendments to the U.S. Constitution.

9. Plaintiffs further seek (i) a permanent injunction of NCPD's policies and (ii) a mandatory injunction by this Court ordering the return and reinstatement of Plaintiffs' New York State pistol licenses and the return of their firearms.

## JURISDICTION

10. Jurisdiction in this court is proper pursuant to 28 U.S.C. § 1331 in that this action arises under the Constitution and laws of the United States, and under 28 U.S.C. § 1343(a)(3) in that this action seeks to redress the deprivation, under of color of the laws, statutes, ordinances, regulations, customs, and usages of the State of New York, of rights, privileges or immunities secured by the United States Constitution.

11. This action seeks relief pursuant to 28 U.S.C. §§ 2201, 2202, and 42 U.S.C. § 1983.

12. Venue in this district is proper pursuant to 28 U.S.C. § 1391.

## THE PARTIES

13. Plaintiffs, DENNIS WYSOCKI and LISA WYSOCKI, (hereinafter "Plaintiffs"), are domiciled in the State of New York and residents of Westbury, Nassau County, New York.

14. Defendant, NASSAU COUNTY, New York (hereinafter the "County"), is a municipal corporate subdivision of the State of New York duly existing by reason of and pursuant to the laws of the State.

15. Defendant, PATRICK RYDER, (hereinafter "Commissioner Ryder"), at all times relevant herein, was employed by the County as the Police Commissioner of the Nassau County Police Department (hereinafter the "Department"). Commissioner Ryder is sued herein in his individual and professional capacity. As Police Commissioner, Commissioner Ryder is the statutory pistol licensing officer in Nassau County [see, Penal Law § 265.00(10)].

16. As statutory licensing officer, Commissioner Ryder sets the policies and procedures for the Nassau County Pistol License Section, enforces such policies and procedures, and has the authority to reinstate Plaintiffs' pistol licenses and return their property (firearms).

17. Defendant MARC TIMPANO (hereinafter "Lt. Timpano") was, at all times relevant herein, an employee of Nassau County and the head of the Nassau County Pistol License Section ("License Section"). Defendant Timpano is sued herein in his individual capacity only.

18. At all times relevant herein, Lt. Timpano had actual authority to create and implement the policies and procedures of the License Section complained of herein.

19. At all times relevant herein, Lt. Timpano had actual authority to suspend and/or revoke the New York State Pistol Licenses of Nassau County residents, order licensees to surrender their handguns, rifles, and shotguns, reinstate their licenses, and return their handguns, rifles, and shotguns, including Plaintiffs.

20. At all times relevant herein, Lt. Timpano personally supervised and had supervisory authority over and directed the actions of the police officers and/or investigators assigned to the License Section, including defendant Scaglione.

21. At all times relevant herein, Commissioner Ryder and Lt. Timpano individually and collectively enforced and implemented subjective policies and procedures of the Pistol License Section against Plaintiffs, which caused the deprivation of their constitutional rights as detailed herein.

22. Defendant Officer "V" SCAGLIONE (hereinafter "Scaglione") was, at all times relevant herein, an employee of County of Nassau and assigned to the Pistol License Section. Defendant Scaglione is sued herein in his individual capacity only.

23. At all times relevant herein, Scaglione enforced and implemented subjective policies and procedures of the Pistol License Section affecting Plaintiffs' rights as codified in the Second, Fourth, and Fourteenth Amendments.

24. At all times relevant herein, each of the individual defendants were acting on behalf of, and in furtherance of, their positions as employees and/or agents of Nassau County.

25. Nassau County is liable for the acts and omissions of the individual defendant law enforcement officers based on the existence of *Monell* liability, as set forth more fully below.

26. At all times relevant herein, each of the individual defendants was acting pursuant to and in furtherance of the established policies and procedures of the Nassau County Police Department.

## THE MATERIAL FACTS

### I. The Second Amendment

27. The Second Amendment to the United States Constitution provides: "A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

28. "[C]onsistent with *Heller* and *McDonald*, [] the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2122 (2022); see *District of Columbia v. Heller*, 554 U.S. 570 (2008); *McDonald v. Chicago*, 561 U.S. 742 (2010); *Caetano v. Massachusetts,* 577 U.S. __ (2016).

29. "[W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 142 S. Ct. at 2126 (citation omitted).

30. "To justify its regulation, the government may not simply posit that the regulation promotes an important interest." *Ibid*. "Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Ibid*.

31. "Public safety" and/or "interest balancing" cannot be used to justify government regulations of Second Amendment protected activity. *Bruen*, at 2126 at n. 3 (rejecting dissent's painstaking chronicle of crimes committed using a firearm – "presumably to justify granting States greater leeway in restricting firearm ownership and use. But, as Members of the Court have already explained, "[t]he right to keep and bear arms ... is not the only constitutional right that has controversial public safety implications.") quoting *McDonald*, at 783.

32. "Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Ibid*.

*Nassau County Pistol License Handbook and Policies*

33. It is the policy and procedure of the Nassau County Police Department and its Pistol License Section to suspend, revoke, and/or refuse to issue a New York State pistol license to any licensee and/or applicant who resides with a third party who is, or who the Department believes may be, a person disqualified from possessing, transferring, purchasing, and receiving firearms under state and/or federal law.

34. It is also the policy and procedure of NCPD to suspend and/or revoke the pistol license of a licensee for any violation or perceived violation of the NCPD Pistol License Handbook (the "Handbook").

35. The Handbook is preempted by New York State and federal law. See generally, Penal Law 265.00, *et seq.,* 400.00, *et seq.*, and 18 U.S.C. 922(g).

36. The Handbook is created and enforced by NCPD.

6

37. NCPD is a police department -- it is not a legislative body -- and it has no authority to create regulations that affect the preexisting rights protected under the Second and Fourteenth Amendments.

38. Penal Law 265.00, *et seq.*, 400.00, *et seq.*, and 18 U.S.C. 922(g) identify the objective disqualifiers to firearm possession under State and federal law.

39. Based on state and federal preemption, the Handbook should be enjoined in its entirety as NCPD is implementing policies and procedures therein that are within the exclusive jurisdiction of the State and federal law.

40. Based on state and federal preemption, the grounds for suspending and/or revoking a license as identified in the Handbook that are not verbatim repetitions of the objective disqualifiers enumerated under state and federal law, should be stricken in their entirety and permanently enjoined.

41. The Handbook defines "suspension" of a firearm license as

> "SUSPENSION: The temporary removal of a <u>license and privilege</u> to possess a handgun or to possess a handgun or rifle/shotgun and/or to conduct business as a dealer, gunsmith, manufacturer, or possess rifles or shotguns as an organization.

Ex. 1 at 4 (emphasis added).

42. The possession of handguns, rifles, and shotguns is a preexisting Right, not a privilege granted by the government. U.S. CONST., AMEND. II; *D.C. v. Heller,* 554 U.S. 570, 592 (2008).

43. The Handbook falsely informs:

> Pursuant to NYSPL § 400.00(11), a pistol license issued by the Nassau County Police Department may be revoked and cancelled by the Commissioner of Police *at any time*. Furthermore, a person whose pistol license is suspended or revoked

7

> for any reason is required to surrender their license and firearms, *including their rifles and shotguns*, to the NCPD Pistol License Section. In the event a license is downgraded, a licensee must comply with any and all rules and regulations applicable to their new pistol license status.

Ex. 1 at 21 (emphasis supplied).

44. Despite representations to the federal court in *Juzumas v. Nassau County,* NCPD continues to enforce a policy that if a pistol license has been suspended, the licensee cannot legally possess rifles and shotguns despite the fact that the possession of rifles and shotguns is not subject to licensing by NCPD. Meaning that the possession of rifles and shotguns by a non-disqualified person during the suspension of a pistol license is entirely legal under state and federal law.

45. Penal Law § 400.00(11)(c) requires the surrender of all firearms upon the suspension or revocation of a pistol license by an individual who becomes ineligible to possess firearms under the objective factors enumerated in 400.00(1).

46. However, no section of Penal Law 400.00(11) forbids possession of rifles and shotguns based on the suspension or revocation of one's pistol license.

47. NCPD enforces a policy that forbids *any* possession of rifles and shotguns if a non-prohibited individual's pistol license has been suspended or revoked by the License Section.

48. No provision of Penal Law §400.00 supports NCPD's policy.

49. At no time relevant herein did either Plaintiff become ineligible to possess firearms under state or federal law.

50. The Handbook identifies a plethora of subjective grounds under which NCPD will suspend a pistol license, which do not constitute a disqualifying event under State or federal law. Ex. 1 at 22-25.

51. NCPD grounds for suspension include: Section 2(d) a "Report of any domestic situation involving a licensee where violence is threatened or alleged to have occurred or the existence of a volatile domestic situation."

52. A "report of any domestic situation involving a licensee where violence is threatened or alleged to have occurred or the existence of a volatile domestic situation" is not a firearms disqualifier under State or federal law. Ex. 1 at 22.

53. Section 2(d) is overly broad, undefined, and vests unfettered discretion in NCPD, and is otherwise inconsistent with the plain text, history, and tradition and should be permanently enjoined.

54. Section 2(d) is not a ground for finding an individual ineligible for the issuance of a license under 400.00(1).

55. Section 2(d) is enforced by NCPD in the absence of a criminal conviction and/or post-judicial hearing order of protection.

56. NCPD enforces section 2(d) to (i) justify the suspension of the right to possess handguns by suspending the pistol license of anyone and everyone in the residence, and (ii) seizing all handguns, rifles, and shotguns through an improper and pretextual implementation of 400.00(11).

57. Section 2(d) and NCPD's enforcement thereof violates the Second, Fourth, and Fourteenth Amendments.

58. Under Section 2(f), the "failure to report any of the following to the Pistol License Section within three (3) business days" constitutes grounds under NCPD policies and procedures to suspend a pistol license, and thereafter seize all handguns, rifles, and shotguns.

59. Section 2(f) is overly broad, undefined, and vests unfettered discretion in NCPD, and is otherwise inconsistent with the plain text, history, and tradition.

60. Section 2(f) is not a ground for finding an individual ineligible for the issuance of a license under 400.00(1).

61. Section 2(f) is enforced by NCPD in the absence of a criminal conviction and/or post-judicial hearing order of protection.

62. NCPD enforces section 2(f) to then (i) justify the suspension of the right to possess handguns by suspending the pistol license of anyone and everyone in the residence, and (ii) seizing all handguns, rifles, and shotguns through an improper implementation of 400.00(11).

63. Section 2(f) and NCPD's enforcement thereof violates the Second, Fourth, and Fourteenth Amendments.

64. Under Section 2(z) a "licensee's failure to comply with any of the regulations stated in this handbook" constitutes grounds under NCPD policies and procedures to suspend a pistol license, and thereafter seize all handguns, rifles, and shotguns.

65. Section 2(z) is overly broad, undefined, and vests unfettered discretion in NCPD, and is otherwise inconsistent with the plain text, history, and tradition.

66. Section 2(z) is not a ground for finding an individual ineligible for the issuance of a license under 400.00(1).

67. Section 2(z) is enforced by NCPD in the absence of a criminal conviction and/or post-judicial hearing order of protection.

68. NCPD enforces section 2(z) to (i) justify the suspension of the right to possess handguns by suspending the pistol license of anyone and everyone in the residence, and (ii) seizing all handguns, rifles, and shotguns through an improper implementation of 400.00(11).

69. Section 2(z) and NCPD's enforcement thereof violates the Second, Fourth, and Fourteenth Amendments.

70. Defendants enforced the aforementioned Handbook sections against Plaintiffs, which led to the violation of Plaintiffs' Second, Fourth, and Fourteenth Amendment rights.

71. In addition to the grounds identified in the Handbook, NCPD exercises arbitrary and broad discretion to suspend a pistol license where Timpano, Ryder, and/or any other member of the License Section 'feel' that a situation is 'dangerous' or 'volatile' and requires a 'time out' – meaning, Timpano and Ryder will suspend and/or direct the suspension a pistol license 'at will' based on events that do not constitute objective firearm disqualifiers under State or federal law, whenever he 'feels like it' under the pretext of "public safety" – as Defendants did with Plaintiffs.

72. Timpano and Ryder then use the unlawful license suspension as a basis to seize all handguns, rifles, and shotguns from a licensee – in the absence of a warrant and/or exigency, as they did to Plaintiffs.

73. Timpano and Ryder's use of 400.00(11) to justify NCPD policy and their action is improper – because none of the events described herein nor the grounds for suspension/revocation identified above constitute a disqualifier to firearm possession nor make an individual 'ineligible' under 400.00(1) for the issuance of a license in the first instance.

74. Along with Ryder and Timpano, Scaglione carries out and enforces these arbitrary and unconstitutional policies, as he did against Plaintiffs.

75. Defendants' knowing and/or deliberate disregard for Plaintiffs' constitutional rights is malicious and intentional, warranting an award of punitive damages against them individually.

76. Plaintiffs' conduct – possessing firearms – is presumptively protected by the plain text of the Second Amendment, which guarantees the individual right to possess and carry weapons in case of confrontation. *Heller*, at 592.

77. Nassau County must justify its policies and procedures by proving their regulations are consistent with the plain text, history, and American traditions of firearm regulations, which they are not.

***Facts Particular to Plaintiffs***

78. Plaintiffs reside in Nassau County, New York with their minor child.

79. Plaintiffs have held valid New York State pistol licenses issued by the Nassau County Police Department without incident.

80. At no time have Plaintiffs suffered from any prohibitor to the possession, purchase, use, or ownership of firearms.

81. In and around February 2023, law enforcement officers accompanied Child Protective Services to Plaintiffs' home upon a comment of possible self-harm made by Plaintiffs' minor child to a school employee.

82. The comment made by Plaintiffs' child did not reference or involve the use or threatened use or attempted use of firearms – the child did not mention firearms at all.

83. Based on the school employee's question as to whether there were firearms in the home, to which the child responded 'yes', CPS and several NCPD police officers responded to Plaintiffs' home.

84. While at Plaintiffs' home, the NCPD officers identified and confirmed that all of Plaintiffs' firearms were safely secured in a locked gun safe to which their daughter did not have access, and the triggers of all firearms were cable locked.

12

85. None of the NCPD police officers confiscated Plaintiffs' firearms or their pistol licenses.

86. No officer sought a warrant to seize any of Plaintiffs' firearms.

87. The officers determined that Plaintiffs' firearms were safely and properly secured from being accessed by any third parties, including their minor child.

88. NCPD determined that there was no exigency to the events at all and, once CPS concluded its reasons for being at Plaintiff's residence, the officers left the residence without any further contact or incident.

89. No officer took any negative action against either Plaintiff.

90. In February 2023, Defendants suspended Plaintiffs' pistol licenses for reasons unrelated to Plaintiffs' eligibility to possess firearms – even though Plaintiffs have remained non-prohibited people throughout the events described herein and so remain.

91. Defendants suspended Plaintiffs' pistol licenses based on the events described above.

92. Defendants suspended Plaintiffs' pistol licenses based on their perceived violations of the Handbook and other subjective reasons under the guise of 'public safety.'

93. Defendants ordered Plaintiffs to surrender all of their handguns, rifles, and shotguns, which they did.

94. Ryder, Timpano, and Scaglione were directly involved in making the decision to suspend Plaintiffs' licenses.

95. Defendant Scaglione told Plaintiffs that they were not allowed to possess any handguns, rifles, or shotguns while their licenses were suspended, which is consistent with NCPD policy and procedure – but inconsistent with New York State law and the Second Amendment.

96. Defendants suspended Plaintiffs' pistol licenses and seized their private property (firearms) based on events that do not cause an individual to be firearms-disqualified under 400.00(1), are not firearms disqualifiers under State or federal law, and are inconsistent with the plain text of the Second Amendment.

97. Defendants suspended Plaintiffs' pistol licenses and seized their property under the sections of the Handbook identified above.

98. Defendants ordered the suspension of, and did suspend, Plaintiffs' pistol licenses and seized their property because they "felt that there was a volatile situation at Plaintiffs' home and decided Plaintiffs needed a 'time out' from their possession of firearms."

99. Defendant Timpano feels that "as a parent, they did the right thing to keep guns out of the house."

100. All of the actions taken against Plaintiffs were subjective, arbitrary, and discretionary.

101. Defendants' actions against Plaintiffs are based solely on an arbitrary and undefined enforcement of "public safety."

102. Nothing Plaintiffs have done renders them dangerous or firearms disqualified.

103. The CPS investigation concluded with a finding of "Unfounded", which was communicated to Defendants.

104. To date, Defendants continue to refuse to reinstate Plaintiffs' pistol licenses and return their property.

105. Timpano and Scaglione are requiring Plaintiffs purchase and obtain two (2) biometric safes as a condition – among other conditions – to reinstating their pistol licenses. Without purchasing the new biometric safes, which are costly and unnecessary, Plaintiffs' pistol

licenses will not be reinstated, per NCPD policy and procedure. In other words, Plaintiffs' licenses will be permanently suspended.

106. Timpano and Scaglione indicated that they "may" reinstate Plaintiffs' pistol licenses once they have completed an "investigation for public safety."

107. Defendants are also requiring documentation from the minor child's physician regarding her residing in a home where firearms are kept.

108. Plaintiffs are unable to obtain any such documentation from a medical practitioner.

109. Without such documentation, Plaintiffs' pistol licenses will not be reinstated, per NCPD policy and procedure. In other words, Plaintiffs' licenses will be permanently suspended.

110. Plaintiffs have not been accused of any crime or unlawful conduct by Defendants or anyone else, nor have they committed any criminal act.

111. NCPD's policies and procedures of suspending, revoking and/or refusing to issue a pistol license as set forth herein subjects Nassau County to *Monell* liability.

112. Defendants acted in concert and aided/abetted one another in the violations of Plaintiffs' constitutional rights as described herein.

113. Defendants' actions have violated Plaintiffs' Second, Fourth, and Fourteenth Amendment rights, presumed nominal damages, the loss of use and enjoyment of their property, economic loss, and the physical manifestations of the same.

## COUNT I
## U.S. CONST., AMEND. II and XIV, 42 U.S.C. § 1983

114. Repeat and reallege paragraphs "1" through and including "113."

115. Under the theory that each and every defendant is liable to plaintiffs for violations of their preexisting rights as protected by the Second and Fourteenth Amendments to the U.S. Constitution, 42 U.S.C. § 1983.

15

### COUNT II
### U.S. CONST., AMEND. IV, 42 U.S.C. § 1983

116. Repeat and reallege paragraphs "1" through and including "115."

117. Under the theory that each and every defendant is liable to plaintiffs for violations of their Constitutional Rights under the Fourth Amendment, 42 U.S.C. § 1983.

### COUNT III
### *MONELL* LIABILITY

118. Repeats and realleges paragraphs "1" through and including "117."

119. Under the theory that, by creating, maintaining, enforcing, following, and/or applying the unconstitutional policy described herein, Nassau County is liable to the plaintiffs under *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018 (1978) for the violations of his Constitutional Rights as plead herein, 42 U.S.C. §1983.

WHERFORE, a Judgment is respectfully requested:

- Declaring the Nassau County policies and procedures described herein violate of the U.S. Constitution, Amendments II, IV, and XIV, including the Pistol License Handbook;
- Permanently enjoining the Nassau County policies and procedures detailed herein, including the Pistol License Handbook;
- Ordering the immediate restoration and reinstatement of the plaintiffs' New York State Pistol Licenses;
- Ordering the return of Plaintiffs' property (firearms);
- Awarding against each and every defendant presumed nominal damages;
- Awarding against each and every defendant compensatory damages;
- Awarding against each and every individually named defendant punitive damages;

16

- Awarding against each and every defendant economic damages;

- Awarding costs, disbursements and reasonable statutory attorney's fees under 42 U.S.C. 1988 and any other applicable statute;

- Granting such other, further, and different relief as to this Court seems just, equitable, and

proper.

Dated: November 29, 2023
      Scarsdale, New York

                                      THE BELLANTONI LAW FIRM, PLLC
                                      *Attorneys for Plaintiffs*

By:    *Amy L. Bellantoni*
           Amy L. Bellantoni (AB3061)
           2 Overhill Road, Suite 400
           Scarsdale, New York 10583
           abell@bellantoni-law.com