UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
DENNIS WYSOCKI and LISA WYSOCKI,

                             Plaintiffs,                    23 Civ. 8790 (SJB)(AYS)

       -against-

NASSAU COUNTY, New York, PATRICK
RYDER, Individually and Officially, MARC
TIMPANO, Individually, Officer VITO
SCAGLIONE, Individually,
                             Defendants.
-------------------------------------------------------------x

# MEMORANDUM OF LAW

# IN SUPPORT OF

# PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

**THE BELLANTONI LAW FIRM, PLLC**
*Attorneys for Plaintiffs*
**2 Overhill Road, Suite 400**
**Scarsdale, New York 10583**
**info@bellantoni-law.com**

**TABLE OF CONTENTS**

**Pages**

TABLE OF AUTHORITIES ........................................................................................................i

PRELIMINARY STATEMENT .................................................................................. 1

UNDISPUTED MATERIAL FACTS .........................................................................3

LEGAL ARGUMENT....................................................................................................7

Summary Judgment Standard .......................................................................................7

The *Bruen* Standard For Second Amendment Challenges ......................................7

I. PLAINTIFFS' CONDUCT FALLS WITHIN THE PLAIN TEXT............................................ 8

II. THE BURDEN OF JUSTIFYING THE CONSTITUTIONALITY OF THE CHALLENGED REGULATIONS IMMEDIATELY SHIFTS TO DEFENDANTS ................................................ 9

III. NASSAU COUNTY IS LIABLE UNDER *MONELL*.............................................. 10

CONCLUSION.................................................................................................................. 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adickes v S.H. Kress & Co.*,
  398 U.S. 144 (1970) ............................................................................................. 7

*Crawford v. Washington*,
  541 U.S. 36 (2004) ............................................................................................. 8

*District of Columbia v. Heller*,
  554 U.S. 570 (2008) ...................................................................................... 2, 8, 9

*Gamble v. United States*,
  587 U.S. 678 (2019) ........................................................................................... 8

*Goldstein v. Schwartz*,
  185 A.D.3d 929 (2d Dept. 2020) ......................................................................... 5

*Kucharczyk v. Westchester Cnty.*,
  95 F. Supp. 3d 529 (S.D.N.Y. 2015) .................................................................. 10

*Leon v Murphy*,
  988 F.2d 303 (2d Cir.1993) ................................................................................. 7

*McDonald v. Chicago*,
  561 U.S. 742 (2010) ........................................................................................... 2

*Milau v. Suffolk Cnty.*,
  No. 17-CV-06061 (JS) (SIL), 2025 WL 1029394 (E.D.N.Y. Feb. 13, 2025) ...................... 1, 10

*Monell v Dep't of Social Servs. of the City of NY*,
  436 U.S. 658 (1978) .......................................................................................... 10

*Nevada Comm'n on Ethics v. Carrigan*,
  564 U.S. 117 (2011) ........................................................................................... 8

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
  597 U.S. 1 (2022) ........................................................................................Passim

*Sibley v. Watches*,
  194 A.D.3d 1385 (4th Dept. 2021) ....................................................................... 5

*United States v. Cruikshank*,
  92 U.S. 542 (1876) ............................................................................................. 9

*Virginia v. Moore,*
  553 U.S. 164 (2008) ................................................................................................................ 8

**Statutes**

42 U.S.C. § 1983 .......................................................................................................................... 10

**Rules**

Fed.R.Civ.P. 56(a) ....................................................................................................................... 7

## PRELIMINARY STATEMENT

Dennis and Lisa Wysocki ("Plaintiffs") submit the within Memorandum of Law, Statement of Undisputed Material Facts pursuant to Local Rule 56.1, and the Declarations of Dennis Wysocki, Lisa Wysocki, and Amy L. Bellantoni with accompanying exhibits in support of Plaintiffs' Motion for Summary Judgment for violation of their Second Amendment rights, as codified in the United States Constitution.

Plaintiffs' motion calls for this Court's determination of a purely legal issue, as there are no material facts in dispute. Plaintiffs' Second Amendment challenge arises from the policies of the Nassau County Police Department ("NCPD") Pistol License Section ("PLS"), codified in the NCPD PLS Pistol License Handbook (the "Handbook") of disarming law-abiding individuals based on the conduct, events, and/or mental health condition of a cohabitant (the "Policy").

Under the Policy, Defendants, as the statutory pistol licensing officer for Nassau County, not only suspend the licensee's pistol license based on a cohabitant's condition and/or conduct, they require the licensee to surrender *all* guns (handguns, rifles, and shotguns).

Under the Policy, the licensee's safe storage of firearms is immaterial; Defendants will only reinstate license and 'allow' the return of the licensee's handguns, rifles, and shotguns when Defendants 'feel better' about the 'safety' of the home.

The Policy is not supported by any authorization from the state pistol licensing regime (Penal Law 400.00); Defendants are acting solely pursuant to a Nassau County Policy.

The Policy is repugnant to the text, history, and tradition of firearm regulations in America and should be permanently enjoined. *See, e.g., Milau v. Suffolk Cnty.*, No. 17-CV-06061 (JS) (SIL), 2025 WL 1029394 (E.D.N.Y. Feb. 13, 2025), report and recommendation adopted, No. 17-CV-6061 (JS)(SIL), 2025 WL 957533 (E.D.N.Y. Mar. 31, 2025) (permanently enjoining Suffolk

1

County's cohabitant policy); and *LaMarco v. Suffolk County*, 2:22-cv-04629-GRB-JMW (E.D.N.Y.) (So Ordered Consent Decree enjoining substantially similar Suffolk County policy).

In *District of Columbia v. Heller* 554 U.S. 570 (2008) and *McDonald v. Chicago*, 561 U.S. 742 (2010), the Supreme Court held that the Second and Fourteenth Amendments protect the individual right to keep and bear arms for self-defense. *See, Heller*, 554 U.S. at 592 (the plain text of the Second Amendment "guarantee[s] the *individual* right to possess and carry weapons in case of confrontation. This meaning is strongly confirmed by the historical background of the Second Amendment") (emphasis added). In *McDonald*, the Supreme Court observed, "decades ago [we] abandoned the notion that the Fourteenth Amendment applies to the States only a watered-down, subjective version of the individual guarantees of the Bill of Rights…" *McDonald*, 561 U.S. at 785–86] because the "right to keep and bear arms…is not the only constitutional right that has controversial public safety implications. All of the constitutional provisions that impose restrictions on law enforcement and on the prosecution of crimes fall into the same category." *Id*. at 783.

In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 17 (2022) the Supreme Court reindorsed its bold rejection of public safety interest balancing as a means of justifying its firearm regulations. *Bruen* reiterated the text, history, and tradition analysis applied by the Supreme Court to the Second Amendment challenges in *Heller* and *McDonald* and constrained the inferior courts to apply its test to all Second Amendment challenges going forward.

Because Plaintiffs' conduct is presumptively protected by the plain text of the Second Amendment, the burden rests squarely on the Nassau County defendants to "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation."

2

*Bruen,* 597 U.S. at 17, 24. "Only then may a court conclude that [Plaintiffs'] conduct falls outside the Second Amendment's "unqualified command." *Bruen*, 597 U.S. at 17, 24.

There is no National historical tradition analogous to Defendants' regulations, nor can Defendants identify one. Disarming individuals based on the actions, conduct, and/or mental health condition of a third person is patently inconsistent with the plain text of the Second Amendment and this Nation's historical traditions of firearm regulation. Accordingly, Plaintiffs are entitled to judgment as a matter of law and the permanent injunction of the Policy.

## UNDISPUTED MATERIAL FACTS[1]

Plaintiffs reside in Nassau County, New York with their minor daughter who, at the time of the events described herein, was a middle school student [Statement of Undisputed Material Facts "SOF" ¶ 1]. Plaintiffs have no disqualifiers to the possession of firearms, whether under state or federal law [SOF ¶2]. Plaintiffs have held valid New York State pistol licenses, which were issued by the PLS, without incident [SOF ¶¶4-14]

In February 2023, Defendants suspended Plaintiffs' pistol licenses for reasons unrelated to Plaintiffs' eligibility to possess firearms and based solely on the fact that they live with their daughter who experienced a mental health issue [SOF ¶ 74]. Plaintiff have been disarmed and barred from possessing handguns, rifles, or shotguns since February 2023 [SOF ¶¶ 70-72].

In February 2023, Plaintiffs' daughter expressed a past thought of self-harm involving a rope; there was no allegation or evidence that Plaintiffs' daughter referenced, threatened the use of, or attempted to use firearms [SOF ¶¶ 17-19, 38-39]. Mrs. Wysocki brought their daughter for a psychiatric evaluation, which resulted in the psychiatrist concluding that she did not pose a

---

[1] Plaintiffs' Statement of Undisputed Material Facts pursuant to Local Rule 56.1 is fully incorporated by referenced herein and made part of Plaintiffs' memorandum of law.

danger to herself of others [SOF ¶¶ 18-21, 26]. There is also no evidence that their daughter had access to Plaintiffs' firearms or the contents of their gun safes [SOF ¶ 22].

The next day, NCPD officers accompanied Child Protective Services to Plaintiffs' home; the responding officers inspected Plaintiffs' safes and determined that their guns were safely stored and that there was no reason to confiscate the weapons [SOF ¶¶ 27-28].

Consistent with the terms of the PLS Handbook, Plaintiffs called PLS the next business day, Monday February 13, 2023 and informed of the weekend's events [SOF ¶¶ 29-41]. Consistent with the Handbook, Officer Vito Scaglione ("Scaglione") told Plaintiffs their handgun licenses were going to be suspended and directed them to bring all of their handguns, rifles, and shotguns to the precinct to be confiscated [SOF ¶¶ 41-48]. Because Plaintiff has a 'high-end' gun collection, he informed Scaglione that he would prefer to surrender his collection to a federal firearms licensee (FFL), Camp-Site Sport Shop, Inc. ("Camp-Site") to be shipped to his mother in Florida until Plaintiffs' pistol licenses were reinstated, to which Scaglione consented [SOF ¶¶ 44-45]. After surrendering all of their guns to Camp-Site, Plaintiffs responded to the PLS to speak with Scaglione, as he required [SOF ¶ 48]. Plaintiffs provided Scaglione with written proof of the surrender of their handguns, rifles, and shotguns to Camp-Site [SOF ¶ 50].

Scaglione handed Plaintiffs (separate) Notices of Pistol License Suspension, and advised that they are forbidden from possessing handguns, rifles, and shotguns for the duration of their suspension; he further required them to provide written statements describing the events leading to their suspension, and informed that their suspension would not end until his investigation was concluded [SOF ¶¶ 51-53].

Plaintiffs provided their written statements and a letter from Dr. Josh Stein, the psychiatrist who evaluated their daughter on February 10, 2023, which concluded that their daughter did not

4

pose a danger to herself or others [SOF ¶¶ 57-59]. But Dr. Stein's letter was not enough; Defendants required Plaintiffs to provide a doctor's letter indicating that it was 'safe' for their daughter to reside in a home where guns are kept [SOF ¶ 60]. In and around June 2023, Plaintiffs informed Scaglione that they are unable to obtain such a letter [SOF ¶ 63]. Plaintiffs are already required by law to store their firearms safely to prevent them from being accessed by their daughter, who is a minor and cannot legally possess guns in the first instance [SOF ¶ 66]; *see,* Penal Law § 265.45. Scaglione also informed Mr. Wysocki that if Plaintiffs' "daughter ever did anything like this again" that their pistol licenses would be "revoked and never returned" [SOF ¶ 67]. There is "no question" that whenever a licensee resides with an individual who expresses suicidal thoughts, the pistol license of every resident is suspended [SOF ¶¶ 100-101, 105].

Scaglione informed Mr. Wysocki that, even if they could obtain a doctor's letter, they could not have their guns back until they obtained two (2) biometric gun safes [SOF ¶ 68]. But Plaintiff have not, and will not, purchase biometric safes; their gun safes are sufficient safe storage, as confirmed by the NCPD responding officers [SOF ¶¶ 69, 27-28].

### *NCPD Policy and its Application to Plaintiffs*

The Nassau County Police Commissioner is the statutory pistol licensing officer for Nassau County; he delegates his licensing authority under § 400.00 to the PLS [SOF ¶ 76]; Penal Law § 400.00. Licensing officers have no general authority over shotguns and rifles [SOF ¶¶ 77, 81] and are bound by the limited scope of authority granted by the Legislature. *See*, *e.g., Goldstein v. Schwartz*, 185 A.D.3d 929, 930 (2d Dept. 2020); *Sibley v. Watches*, 194 A.D.3d 1385, 1389 (4th Dept. 2021).

Defendants, however, believe that they derive their authority from their own Handbook, not the state Legislature [SOF ¶¶ 80-89], including confiscation of long guns, over which the PLS

5

has no licensing authority [SOF ¶¶ 81-84]. Scaglione acted under the terms of the Handbook when suspending Plaintiffs' licenses and confiscating their handguns and long guns [SOF ¶ 88-119].

Plaintiffs' pistol licenses were suspended based on the terms of the Handbook [SOF ¶ 85, which terms have been the Policy of the PLS since, at least, 2016 [SOF ¶¶ 120-123].

The Handbook contains the rules, procedures, guidelines for a pistol licensee and provides the grounds for suspending and/or revoking a license [SOF ¶¶46-48]. The Handbook contains a 'non-exhaustive list' of events that a licensee is required to report to the PLS within three (3) business days, which include when "a member of the licensee's household receives professional treatment for mental health issues, including depression" and "a member of the licensee's household is admitted to any public or private hospital for treatment of mental health issues ("Incidents") [SOF ¶¶ 93-95]. Any one of these reportable Incidents, from this non-exhaustive list, constitutes grounds for suspension of a pistol license [SOF ¶ 96]. And under the terms of the Handbook, the suspension of a pistol license "for any reason" requires confiscation of all handguns, rifles, and shotguns [SOF ¶ 97].

Under PLS Policy, a pistol license will be suspended whenever a member of the licensee's household receives professional treatment for mental health issues, including depression [SOF ¶ 98]. The suspension of a pistol license based on a cohabitant-related event requires all rifles and shotguns to be surrendered or confiscated as well [SOF ¶¶ 99-104] and all licensees are rendered absolutely disarmed during the period of suspension [SOF ¶¶ 102-108].

Plaintiffs have committed no act that required their disarmament except reside with their daughter who had a mental health issue [SOF ¶ 114].

6

## LEGAL ARGUMENT

### Summary Judgment Standard

Summary judgment may not be granted unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. See, *Adickes v S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970). Summary judgment is appropriate only where, after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party. *Leon v Murphy*, 988 F.2d 303, 308 (2d Cir.1993).

There are no genuine issues of material fact to be determined in this matter and Plaintiffs are entitled to judgment as a matter of law.

### The *Bruen* Standard For Second Amendment Challenges

In keeping with *Heller*, the Supreme Court in *NYSRPA v. Bruen*, held that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. *Bruen*, 597 U.S. at 17.

Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command." *Id.* (citation omitted).

Courts called upon to make such determinations are cautioned that "when it comes to interpreting the Constitution, not all history is created equal. Constitutional rights are enshrined

7

with the scope they were understood to have *when the people adopted them*." *Bruen*, at 2136

quoting *D.C. v. Heller*, 554 U.S. 570, 634–635 (2008) (emphasis in the original).

The scope of the protection applicable to the Federal Government and States is pegged to

the public understanding of the right when the Bill of Rights was adopted in 1791. *Bruen*, 597 U.S.

at 37.[2]

But to the extent later history contradicts what the text says, the text controls; liquidating

indeterminacies in written laws is far removed from expanding or altering them. *Bruen*, 597 U.S.

at 36 citing, *Gamble v. United States*, 587 U.S. 678, 721-22 (2019) (THOMAS, J., concurring)

*citing,* Letter from J. Madison to N. Trist (Dec. 1831), in 9 Writings of James Madison 477 (G.

Hunt ed. 1910).

The courts "must also guard against giving postenactment history more weight than it can

rightly bear. *Bruen*, 597 U.S. at 35. Indeed, "post-ratification adoption or acceptance of laws that

are *inconsistent* with the original meaning of the constitutional text obviously cannot overcome or

alter that text." *Bruen*, 597 U.S. at 36 (emphasis supplied) (citations omitted).

## I. PLAINTIFFS' CONDUCT FALLS WITHIN THE PLAIN TEXT

Conduct that falls within the plain text of the Second Amendment is presumptively

protected by the Constitution. *Bruen*, 597 U.S. at 17. Plaintiffs' conduct – possessing and carrying

handguns for self-defense – has been conclusively deemed protected by the plain text of the Second

Amendment.

> Putting all of these textual elements together, we find that they ***guarantee the individual right to possess and carry weapons in case of confrontation***.
>
> This meaning is strongly confirmed by the historical background of the Second Amendment. We look to this because it has always been widely understood that

---

[2] Citing *Crawford v. Washington*, 541 U.S. 36, 42–50 (2004) (Sixth Amendment); *Virginia v. Moore*, 553 U.S. 164, 168–169 (2008) (Fourth Amendment); *Nevada Comm'n on Ethics v. Carrigan*, 564 U.S. 117, 122–125 (2011) (First Amendment).

> the Second Amendment, like the First and Fourth Amendments, codified a pre-existing right.
>
> The very text of the Second Amendment implicitly recognizes the pre-existence of the right and declares only that it "shall not be infringed."
>
> As we said in *United States v. Cruikshank*, 92 U.S. 542, 553, 23 L.Ed. 588 (1876), "[t]his is not a right granted by the Constitution. Neither is it in any manner dependent upon that instrument for its existence. The second amendment declares that it shall not be infringed ...."

*Heller*, 554 U.S. at 592 (emphasis added); c.f., *Bruen*, 597 U.S. at 33 ("The Second Amendment's plain text thus presumptively guarantees petitioners Koch and Nash a right to 'bear' arms in public for self-defense").

The starting point for this Court's assessment of Nassau County's justifications, if and when offered in its responsive papers, is the legal presumption that Plaintiffs enjoy a pre-existing and guaranteed individual right to possess and carry handguns for self-defense. Defendants' enforcement of the challenged Policy has caused their complete disarmament and the forced surrender of their handguns, rifles, and shotguns with the understanding that they are explicitly prohibited from possessing any type of gun during the suspension of their pistol license.

## II.   THE BURDEN OF JUSTIFYING THE CONSTITUTIONALITY OF THE CHALLENGED REGULATIONS IMMEDIATELY SHIFTS TO DEFENDANTS

Under the *Bruen* test, the burden rests squarely on Nassau County to justify its policies as set forth in Plaintiffs' Statement of Facts, which prohibit the right to possess any type of firearm - handguns, rifles, and shotguns - based on an event or condition of a household member.

No such tradition existed in the Founding Era and, to the extent that Nassau County musters up some theory grounded in post-ratification trend(s), any such regulation would be patently inconsistent with the plain text of the Second Amendment, which "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *Heller*, 554 U.S. at 592.

### III. NASSAU COUNTY IS LIABLE UNDER *MONELL*

Nassau County is liable for violation of Plaintiffs' Second Amendment rights based on the established policies and practices testified to by Defendants Timpano and Scaglione and the customs and practices of the PLS as set forth in the 2023 Handbook, which date back to the 2016, if not longer.  See, *Monell v Dep't of Social Servs. of the City of NY*, 436 U.S. 658, 98 S. Ct. 2018 (1978) [*see*, SOF ¶¶ 120-123].

Under *Monell*, municipalities and other local governmental entities may be held liable under 42 U.S.C. § 1983 for constitutional violations caused by an official policy or custom. *Milau v. Suffolk Cnty.*, No. 17-CV-06061 (JS) (SIL), 2025 WL 1029394, at *5 (E.D.N.Y. Feb. 13, 2025), report and recommendation adopted, No. 17-CV-6061 (JS)(SIL), 2025 WL 957533 (E.D.N.Y. Mar. 31, 2025) citing, *Monell*, 436 U.S. at 663.

The "policy or custom" element may be established by demonstrating a formal policy officially endorsed by the municipality. *Milau*, at *11 citing *Kucharczyk v. Westchester Cnty.*, 95 F. Supp. 3d 529, 538-39 (S.D.N.Y. 2015).

In *Milau*, the court found that the same type of policy was being enforced by the Suffolk County Police Department's Pistol Licensing Bureau (PLB) – violation of an individual's right to possess and carry guns because of an event and/or condition of a cohabitant. In *Milau*, the defendants refused to process the plaintiff's application for a pistol license because his adult son, with whom he resided, was disqualified from possessing guns under state and federal law.  *Monell* liability was found to exist based on the formal written policy codified in the PLB's Pistol License Information Handbook, which identified "the conviction of a member of the licensee's household of a felony or other serious offense" as grounds for suspension or revocation, as well as the testimony of PLB supervisors and police officer investigators.

10

Similarly, the PLS Handbooks reaching back to 2016 - and the sworn deposition testimony of the Nassau County defendants - also confirm the existence and enforcement of a Policy of suspending a pistol license and confiscating *all* guns based on a cohabitant's conduct and/or condition, and that the challenged policies were enforced against Plaintiffs and continue to be enforced against them [SOF ¶¶ 76-119].

## CONCLUSION

Plaintiffs' motion for summary judgment should be granted in its entirety, Nassau County's policies and those portions of the Handbook challenged herein should be permanently enjoined, and a hearing should be scheduled to determine the amount of Plaintiffs' monetary damages.

Dated: September 8, 2025
     Scarsdale, New York

       THE BELLANTONI LAW FIRM, PLLC
       *Attorneys for Plaintiffs*

By:    _____/s_____
       Amy L. Bellantoni (AB3061)
       2 Overhill Road, Suite 400
       Scarsdale, New York 10598
       abell@bellantoni-law.com