UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
DENNIS WYSOCKI and LISA WYSOCKI,

                            Plaintiffs,                      23 Civ. 8790 (SJB)(AYS)

      -against-

NASSAU COUNTY, New York, PATRICK
RYDER, Individually and Officially, MARC
TIMPANO, Individually, Officer VITO
SCAGLIONE, Individually,
                            Defendants.
-------------------------------------------------------------x

## MEMORANDUM OF LAW IN OPPOSITION TO

## PLAINTIFFS' MOTION

## FOR SUMMARY JUDGMENT

 

THOMAS A. ADAMS
Nassau County Attorney
Attorney for Defendant
COUNTY OF NASSAU
By: *Nicholas Zotto, Esq*.
Nicholas Zotto
Deputy County Attorney
Nassau County Attorney's Office
One West Street
Mineola, New York 11501
*Counsel for Defendant*

Dated: December 1, 2025
      Mineola, N.Y.

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 4

STATEMENT OF RELEVANT FACTS ................................................................................... 6

STANDARD OF REVIEW ...................................................................................................... 7

ARGUMENT ........................................................................................................................... 7
  I. PLAINTIFFS HAVE NOT MET THEIR BURDEN UNDER RULE 56 ............................ 7

  II. NASSAU'S RESPONSE TO A CONTEMPORANEOUS MENTAL HEALTH
     CRISIS IS CONSISTENT WITH THE SECOND AMENDMENT
     UNDER BRUEN AND RAHIMI ..................................................................................... 8
     A. Bruen supplies the framework, but it does not dictate
       Plaintiffs' preferred outcome ..................................................................................... 9
     B. Rahimi confirms that temporary, danger-based disarmament
       is constitutional even without a historical "twin" ............................................... 10
     C. The historical record supports temporary restrictions
       where credible risk exists ........................................................................................ 11

  III. PLAINTIFFS' CRITICISMS OF THE COUNTY'S PRACTICES AND THEIR
      RELIANCE ON SUFFOLK COUNTY CASES ARE UNPERSUASIVE ........................ 12

  IV. PLAINTIFFS' MONELL CLAIM FAILS AS A MATTER OF LAW ............................ 13

CONCLUSION ...................................................................................................................... 13

## TABLE OF AUTHORITIES

**Cases**

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) ................................................................... 4, 7

*City of Los Angeles v. Heller*, 475 U.S. 796 (1986) ................................................................. 13

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ............................................................ 9, 12

*Leon v. Murphy*, 988 F.2d 303 (2d Cir. 1993) ...................................................................... 4, 7

*McDonald v. City of Chicago*, 561 U.S. 742 (2010) ............................................................ 9, 12

*Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978) .............................. 4, 12, 13

*New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022) .......................................... 4, 9

*United States v. Rahimi*, 602 U.S. 680 (2024) ...................................................................... 4, 10

**Statutes**

18 U.S.C. § 922(g)(8) .............................................................................................................. 10

N.Y. Mental Hyg. Law § 9.46 ......................................................................................... 4, 11, 13

N.Y. Penal Law § 400.00 ..................................................................................................... 4, 13

**Rules**

Fed. R. Civ. P. 56(a) .................................................................................................................. 7

Local Civ. R. 56.1 (E.D.N.Y.) ................................................................................................... 6

**Constitutional Provisions**

U.S. Const. amend. II ..................................................................................................... 4, 8, 13

**PRELIMINARY STATEMENT**

Plaintiffs ask this Court to take the extraordinary step of granting summary judgment on both their Second Amendment and *Monell* claims, and to permanently enjoin Nassau County from employing procedures that exist precisely to mitigate the risk of suicide and serious harm when firearms are present in a home where a resident has experienced an acute mental health crisis. That request is inconsistent with Rule 56, with the factual record, and with the Supreme Court's Second Amendment jurisprudence.

When the undisputed core sequence of events is viewed in the light most favorable to the County, the case looks very different from the one described in Plaintiffs' motion. Plaintiffs' minor daughter disclosed suicidal ideation. Child Protective Services and the police responded. Plaintiffs themselves contacted the Pistol License Section ("PLS") to report the incident and to seek guidance. Acting under Penal Law § 400.00, the PLS Handbook, and New York's mental health reporting framework, PLS temporarily suspended Plaintiffs' pistol licenses, sought additional medical information, and evaluated whether further safety measures, such as upgraded storage, were necessary while the risk was assessed. Plaintiffs then voluntarily arranged for their firearms to be transferred to a federal firearms licensee.

Plaintiffs now attempt to recast those events as the application of a categorical "cohabitant policy" that automatically and permanently disarms otherwise law-abiding citizens whenever a household member receives mental health treatment. That characterization is inaccurate, incomplete, and disputed in multiple material respects.

The motion should be denied for three independent reasons. First, there are multiple, outcome-determinative factual disputes that preclude summary judgment. Plaintiffs' Local Rule 56.1 submission is not the final word on what occurred, on how the PLS Handbook operates in

4

practice, on the discretion vested in licensing personnel, or on the temporary and investigative nature of the actions taken here. Under *Adickes* and *Leon*, such disputes must be resolved by the factfinder, not on a paper record that Plaintiffs have carefully curated for litigation.

Second, on the merits, Nassau's response to a contemporaneous, documented mental health crisis in a home with firearms is consistent with the Second Amendment as interpreted by *New York State Rifle & Pistol Ass'n v. Bruen* and *United States v. Rahimi*. The relevant question under *Bruen* is whether the County's conduct accords with this Nation's historical tradition of firearm regulation. Historically, governments have been permitted to temporarily disarm dangerous individuals and to regulate the manner and conditions of firearm possession to prevent suicide, domestic violence, and accidental harm. *Rahimi* confirms that targeted, temporary disarmament based on credible evidence of dangerousness is constitutional, even in the absence of a historical "twin."

Third, Plaintiffs' *Monell* theory fails as a matter of law. The existence of a PLS Handbook adopted to implement state statutes, including Penal Law § 400.00 and Mental Hygiene Law § 9.46, does not by itself establish an unconstitutional municipal policy. The Handbook channels and structures the licensing officer's state-law obligations. It does not mandate automatic, permanent confiscation of all firearms whenever a cohabitant receives treatment. Even if Plaintiffs could identify a flaw in the handling of their particular case, that would not entitle them to the facial, systemwide injunction they seek.

For all of these reasons, Plaintiffs' motion for summary judgment should be denied in its entirety.

## STATEMENT OF RELEVANT FACTS

Defendants incorporate by reference their responses and counterstatement to Plaintiffs' Local Rule 56.1 Statement of Undisputed Material Facts. For purposes of this memorandum, it is sufficient to highlight several respects in which Plaintiffs' presentation is either materially incomplete or the subject of genuine dispute.

First, the nature and timing of the mental health crisis are disputed. Plaintiffs' daughter reported suicidal ideation serious enough to prompt a psychiatric evaluation and CPS involvement. The precise content of those statements, how they were conveyed to and understood by clinicians and law enforcement, and the level of concern they reasonably generated are factual questions that cannot be resolved on summary judgment.

Second, there is a dispute regarding access and risk in the home. Plaintiffs emphasize that their firearms were in safes. The County does not accept that this arrangement eliminated risk. Among other things, the configuration, location, and accessibility of the safes, the actual practices in the home, and the capabilities of a determined suicidal teenager are all relevant to the risk assessment that PLS was required to undertake.

Third, the scope and duration of PLS action are contested. Plaintiffs repeatedly describe themselves as having been "permanently disarmed." The County's evidence supports a different view, namely that the suspension of the licenses and the securing of firearms were temporary and investigative, imposed while PLS gathered medical documentation, verified the safety of the storage arrangements, and evaluated appropriate conditions for reinstatement.

Fourth, Plaintiffs' characterization of the PLS Handbook as an inflexible, automatic "cohabitant policy" is not borne out by the record. The County will show that the Handbook is an administrative manual that operationalizes the licensing officer's statutory responsibilities; that it calls for investigation and interim measures when certain categories of information are received; and that, in practice, PLS exercises case-by-case discretion in light of the severity and recency of the reported incident, the household configuration, and remedial measures undertaken by the licensees.

These disputes are material to both the Second Amendment and *Monell* inquiries. On this record, they cannot be resolved in Plaintiffs' favor as a matter of law.

## STANDARD OF REVIEW

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact" and the movant "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.

Because plaintiffs are the parties seeking summary judgment here, they bear the burden of showing that, even viewing the record most favorably to Nassau County and the individual defendants, no reasonable factfinder could reject their constitutional claims. Where, as here, material facts are disputed or multiple inferences can be drawn, summary judgment must be denied.

## ARGUMENT

### I. PLAINTIFFS HAVE NOT MET THEIR BURDEN UNDER RULE 56

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P.

7

56(a). The moving party bears the initial burden of demonstrating the absence of a genuine factual dispute. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). In evaluating the record, the Court must draw all reasonable inferences in favor of the nonmovant, and summary judgment may be granted only if "no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir. 1993).

Plaintiffs' motion is largely an effort to substitute their narrative for the factfinder's role. They ask the Court to accept as established that their daughter posed no real risk of self-harm, that PLS acted "solely" because of a cohabitant's mental health treatment, that the Handbook operates as a rigid, categorical "cohabitant ban," and that the disarmament at issue was absolute and permanent. These are classic fact questions.

A reasonable jury could instead conclude that PLS officers, confronted with a recent report of suicidal ideation by a minor in a home with multiple firearms, had credible grounds to view the situation as presenting a risk of serious harm; that the decision to suspend the licenses and to secure the weapons reflected a particularized risk assessment rather than rote application of a checklist; that the Handbook is an internal guidance document implementing the licensing officer's statutory duty to ensure good moral character and safe possession, rather than an unconstitutional "cohabitant ban"; and that the steps taken were temporary, investigative, and designed to remain in place only until additional information and safety measures satisfied the County that the risk had been addressed.

Because these disputed issues are material to whether there was any constitutional violation at all, Rule 56 requires denial of Plaintiffs' motion.

**II. NASSAU'S RESPONSE TO A CONTEMPORANEOUS MENTAL HEALTH CRISIS IS CONSISTENT WITH THE SECOND AMENDMENT UNDER BRUEN AND RAHIMI**

### *A. Bruen supplies the framework, but it does not dictate Plaintiffs' preferred outcome*

Defendants do not dispute that *Bruen*'s text-and-history framework governs. Under that framework, the Court asks first whether the Second Amendment's plain text covers the conduct at issue. If it does, the burden shifts to the government to show that its regulation is consistent with this Nation's historical tradition of firearm regulation. *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 17, 24 (2022).

*Bruen*, however, did not convert the right to keep and bear arms into an unqualified guarantee that is immune from all risk-based regulation. Both *District of Columbia v. Heller* and *Bruen* describe the right as belonging to "law-abiding, responsible citizens." *Heller*, 554 U.S. 570, 635 (2008); *Bruen*, 597 U.S. at 26. *District of Columbia v. Heller* also expressly endorsed as "presumptively lawful" longstanding prohibitions on firearm possession by felons and the mentally ill and recognized the legitimacy of regulations designed to prevent accidents and misuse. 554 U.S. at 626–27. *Bruen* did not disavow those principles.

Plaintiffs' framing of the question as a simple inquiry into whether they are "law abiding" in the narrow sense of not having felony convictions is too crude. The question under *Bruen*, and under the Supreme Court's subsequent decision in *United States v. Rahimi*, is whether the government may, consistent with historical tradition, temporarily restrict firearm access where credible, contemporaneous information indicates a serious risk of lethal harm in a particular household. Here, PLS acted in response to a recent, documented episode of suicidal ideation by a minor cohabitant, and it did so through temporary, investigative measures that were tied to information and risk. That context is significantly different from the static, general possession rights involved *in District of Columbia v. Heller, McDonald*, and *Bruen*.

9

***B. Rahimi confirms that temporary, danger-based disarmament is constitutional even without a historical "twin"***

Plaintiffs largely ignore the Supreme Court's recent opinion in *United States v. Rahimi*, 602 U.S. 680 (2024). *Rahimi* reaffirmed *Bruen's* analytical structure, but made clear that modern regulations need not be supported by a one-to-one historical "twin." Instead, courts look to whether a modern restriction is consistent with the principles that underpin the Nation's historical tradition of firearm regulation and, in particular, whether it is "relevantly similar" to those practices. *Id*. at 693.

In upholding 18 U.S.C. § 922(g)(8), which temporarily disarms individuals subject to certain domestic violence protective orders, the Court emphasized that when an individual has been found, in a constitutionally adequate proceeding, to pose a credible threat to the physical safety of another, that individual may be temporarily disarmed consistent with the Second Amendment. Id. at 693–95. The Court relied on historical practices that permitted the government to require sureties, to restrict the public carrying of arms by those who posed a threat, and to intervene where individuals presented a concrete danger to others.

If the Constitution permits temporary disarmament of persons subject to a domestic violence restraining order based on a judicial finding of risk, it cannot be read to forbid temporary, investigative steps by a licensing authority that has received contemporaneous information indicating that a suicidal minor resides in a home with readily accessible firearms. The regulatory principle is the same. In both settings, the government acts in a targeted and time-limited way, based on reliable evidence of dangerousness, to prevent serious harm while the risk is appropriately managed.

### C. The historical record supports temporary restrictions where credible risk exists

Plaintiffs contend that there is no historical tradition of "cohabitant mental health" disarmament. That formulation misstates the inquiry. *Bruen* and *Rahimi* do not require an eighteenth-century statute that uses the identical label. They require that the modern regulation be consistent with historically accepted principles.

The historical materials identified by *District of Columbia v. Heller*, *Bruen*, and *Rahimi* themselves reveal at least three relevant strands. First, there is a tradition of disarming those deemed dangerous, including through surety laws and prohibitions on going armed in a manner that terrorized the public. Second, there is a tradition of regulating storage and use of firearms and gunpowder in the home to prevent accidental harm and fires, which confirms that government may address household risks associated with firearms. Third, modern statutes like Mental Hygiene Law § 9.46, which direct mental health professionals to report individuals likely to engage in conduct that would result in serious harm to self or others and permit licensing authorities to act on that information, reflect a continuity with the longstanding principle that the State may intervene when credible evidence indicates a serious risk of harm.

Here, PLS responded to credible, recent information that a minor in Plaintiffs' home had expressed suicidal ideation. The steps taken were temporary and tailored: a suspension while additional information was gathered and while storage and safety were evaluated, coupled with Plaintiffs' voluntary transfer of their firearms to an FFL. That response accords with the principles underlying the historical tradition recognized by the Supreme Court. It is not the sort of permanent, generalized disarmament of non-dangerous, law-abiding citizens that *Bruen* prohibits.

### III. PLAINTIFFS' CRITICISMS OF THE COUNTY'S PRACTICES AND THEIR RELIANCE ON SUFFOLK COUNTY CASES ARE UNPERSUASIVE

Plaintiffs invoke *District of Columbia v. Heller*, *McDonald*, and *Bruen* to suggest that any interference with their in-home possession of firearms is constitutionally forbidden. Those cases say no such thing. Each recognizes that the right is not absolute and that longstanding regulations, including those directed at persons who are dangerous or mentally ill, remain valid. None considered, much less invalidated, temporary, case-specific responses to an acute risk event.

Plaintiffs' reliance on *Milau* and related Suffolk County litigation is also misplaced. Those cases are not binding on this Court. They arose from different factual records and policies, and several were decided before *Rahimi* clarified how courts should apply the historical analogue analysis. To the extent they involved categorical denials of applications by individuals who lived with adult prohibited persons, they present a materially different posture than the one before the Court here, which involves a temporary response to a discrete mental health crisis involving a minor and an ongoing investigation.

In any event, Plaintiffs cannot simply graft Suffolk County's admissions and policies onto Nassau County. *Monell* liability requires proof of an unconstitutional policy or custom in this municipality, on this record, and Plaintiffs have not made that showing.

### IV. PLAINTIFFS' MONELL CLAIM FAILS AS A MATTER OF LAW

Plaintiffs' *Monell* claim fails for at least two reasons. First, for the reasons set out above, Plaintiffs have not established any underlying constitutional violation. Absent such a violation, there can be no municipal liability. *City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986).*

Second, even if Plaintiffs could show some deficiency in the handling of their individual case, they have not demonstrated the existence of an unconstitutional municipal policy or custom.

The PLS Handbook is not a free-standing firearm code. It is an internal manual that implements state statutes and provides guidance to license staff on how to discharge the licensing officer's duties under Penal Law § 400.00 and related provisions, including Mental Hygiene Law § 9.46. It directs staff to investigate and, where appropriate, to impose temporary suspensions or conditions when credible information suggests a risk of serious harm. It does not, by its terms, mandate permanent disarmament or prohibit the exercise of discretion in light of particular facts.

To prevail on a facial *Monell* challenge, Plaintiffs would have to show that the Handbook is unconstitutional in all or virtually all of its applications, or that the County has adopted a practice that inevitably results in constitutional violations. On this record, they can do neither. At most, they identify one contested application of the Handbook in a single case involving an acute mental health crisis. That is not enough to establish that Nassau County has adopted an unconstitutional policy warranting the broad injunction they seek. Any concerns the Court might harbor about the particular handling of Plaintiffs' matter would be properly addressed, if at all, on an as-applied basis after factual development at trial, not through the summary invalidation of Nassau's risk - management framework.

## CONCLUSION

Plaintiffs have not carried their burden under Rule 56 to show that there is no genuine dispute as to any material fact or that they are entitled to judgment as a matter of law. The record, viewed in the light most favorable to Nassau County, reflects a temporary, investigative response to a contemporaneous mental health crisis involving a suicidal minor in a home with firearms, implemented under state statutes and internal guidance that are consistent with the Second Amendment as interpreted by *Bruen* and *Rahimi*. Plaintiffs have not demonstrated any

13

constitutional violation, much less an unconstitutional municipal policy warranting facial injunctive relief.

For all of these reasons, Defendants respectfully request that the Court deny Plaintiffs' motion for summary judgment in its entirety, and grant such other and further relief as the Court deems just and proper.

Dated: December 1, 2025
    Mineola, New York

THOMAS A. ADAMS
Nassau County Attorney
Attorney for Defendant
COUNTY OF NASSAU
By: *Nicholas Zotto, Esq*.
Nicholas Zotto
Deputy County Attorney
Nassau County Attorney's Office
One West Street
Mineola, New York 11501
*Counsel for Defendant*

14